IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOHN RUSSELL LAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION** |
| v. | ) | **AND RECOMMENDATION** |
| | ) | |
| A.P. INDUSTRIES, INC., | ) | 1:08CV835 |
| | ) | |
| Defendant. | ) | |

This matter is before the court on a motion for summary judgment by Defendant A.P. Industries, Inc. (docket no. 18). Plaintiff John Russell Lawson has responded in opposition to the motion, and the matter is ripe for disposition. The parties have not consented to the jurisdiction of a magistrate judge. Therefore, the motion must be dealt with by way of recommendation. For the following reasons, it will be recommended that the court grant the motion for summary judgment.

**BACKGROUND**

On October 13, 2008, Plaintiff filed this action, seeking compensatory and punitive and/or treble damages for breach of contract, unfair and deceptive trade practices, and fraud in North Carolina state court, arising out of Plaintiff's contention that Defendant has failed to pay him royalties owed pursuant to a written contract between the parties. On November 17, 2008, Defendant removed the action to this court. The parties have engaged in discovery, and Defendant now seeks summary judgment as to some of Plaintiff's claims.

**FACTS**

Plaintiff is an independent furniture designer and a North Carolina resident. Plaintiff works with furniture manufacturers, who then pay him royalties on the sales of furniture he designs. Defendant is a furniture manufacturer organized and existing under the laws of Canada. Defendant sells its furniture to distributors in Canada, the United States, and Mexico.

<u>The Designer Agreement between the Parties</u>

The parties entered into a Designer Agreement on June 30, 1997. (*See* Designer Agreement, attached as Def.'s Ex. E.) Under the Designer Agreement, Defendant is required to pay Plaintiff royalties on the sales of furniture designed by Plaintiff and manufactured by Defendant. More specifically, the Designer Agreement states, in pertinent part:

> The decision to determine what designs and products are manufactured will be solely that of the COMPANY. The designs submitted and not selected to be manufactured will be returned to the DESIGNER. All designs once accepted and placed into manufacturing become the exclusive property of the COMPANY.
>
> The COMPANY agrees to pay the DESIGNER a royalty of one percent (1%) on net sales on all designs by the DESIGNER as long as they are produced. Net sales is defined as invoiced to customer amounts, less a two percent (2%) provision for handling, freight and other damage. The exception shall be Sears, in which case the royalty will be one-half of one percent (½%). When merchandise is discounted more than 10% or sold as a close-out, no royalty will be paid.

(*Id.*, p.1.)

Collections and Individual Furniture Pieces Designed by Lawson

Relevant to this lawsuit, it is undisputed that Plaintiff designed the following five collections of furniture: (1) Wrenn's Nest Collection (design numbers 1900 and 1950); (2) Cambridge Collection (design number 6300); (3) Icon Collection (design number 1200); (4) La Renaissance Collection (design numbers 1700 and 1750); and (5) Burlington Collection (design number 3800). In addition, it is undisputed that Plaintiff designed two baby cribs and two beds. The cribs were manufactured separately from the furniture collections and were called the Wrenn's Nest crib and the Cambridge crib. The two beds are the Shuttered Sleigh Bed designed by Plaintiff alone, and the Princess Bed in which Plaintiff collaborated in the design. In his complaint, Plaintiff alleges that Defendant owes him unpaid royalties for various collections that he allegedly designed for Defendant. As will be discussed herein, in his response to Defendant's summary judgment, Plaintiff has conceded that he has been paid royalties owed as to various collections, and he has further conceded various arguments on summary judgment by Defendant.

**STANDARD OF REVIEW**

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. International Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

**ANALYSIS**

In the Complaint, Plaintiff alleges that he is due royalties for various collections produced by Defendant that Plaintiff contends were his designs. The complaint purports to allege legal claims against Defendant for breach of contract, fraud, and unfair and deceptive trade practices, all based on Defendant's alleged failure to pay Plaintiff royalties that he contends he is entitled to under the parties' Designer Agreement.

In the motion for summary judgment, Defendant requests that the court enter an order making the following specific findings: (1) Plaintiff cannot establish his claim for breach of contract seeking unpaid royalties on Defendant's Oceanic Collection, Napa Valley Collection, and Cottage Bunk Bed as a matter of law; (2) Plaintiff cannot establish his claim for breach of contract seeking unpaid royalties on Defendant's Wrenn's Nest Collection, Cambridge Collection, and Cambridge crib as a matter of law; (3) Plaintiff's damages for his breach of contract claim seeking unpaid royalties on Defendant's Wrenn's Nest Crib, Shuttered Sleigh Bed, and Princess Bed are limited to the royalties that became due on or after October 13, 2005; (4) Plaintiff cannot establish a claim for fraud as a matter of law; and (5) Plaintiff cannot establish a claim for unfair and deceptive trade practices as a matter of law.[1] In response to the summary judgment motion, Plaintiff has conceded that Defendant is entitled to summary judgment as to several claims and issues alleged in the complaint.

**I. Plaintiff's Claims for Common Law Fraud and Unfair and Deceptive Trade Practices under N.C. GEN. STAT. § 75-1.1**

---

[1] In its brief, Defendant further asserts that it inadvertently paid Plaintiff royalties for certain furniture that Plaintiff did not design and that Defendant has since recovered the overpayments from Plaintiff. Plaintiff does not challenge Defendant's assertions regarding overpayment in the summary judgment motion.

Plaintiff has conceded in his response brief that his claims for fraud and unfair and deceptive trade practices should be dismissed.[2] (*See* Response Br., p. 10.) Therefore, the court should grant summary judgment to Defendant as to both of these claims.

## II. Plaintiff's Claim for Breach of Contract

Plaintiff has also conceded in his response brief that Defendant is entitled to summary judgment as to part of his breach of contract claim. That is, Plaintiff concedes that he has been paid and is not due any more royalties for the Wrenn's Nest, Cambridge, Icon, La Renaissance, and Burlington Collections, or for the Cambridge crib designed by him. (*See id.*, p. 10.) Plaintiff further concedes that to the extent royalties are due for two beds and one crib, his recovery for his breach of contract claim is limited by the applicable three-year statute of limitations. (*Id.*; *see also* N.C. GEN. STAT. § 1-52(1) (2009) (three years from date of breach of contract). More specifically, Plaintiff concedes that his right to royalties for the Wrenn's Nest crib, the Shuttered Sleigh Bed, and the Princess Bed are limited to royalties due and unpaid from October 13, 2005, to the present. (*See* Response Br., p. 10.)

---

[2] In support of his fraud and unfair and deceptive trade practices claims, Plaintiff alleges in the complaint that Defendant intentionally altered its accounting software and changed its stock keeping unit ("SKU") numbers for various furniture designs. Plaintiff alleges that Defendant changed its SKU numbers to conceal the production of Plaintiff's designs so it could avoid paying Plaintiff for royalties owed to him. Defendant devotes a portion of its summary judgment brief to discussing its SKU system. Because Plaintiff has abandoned his claims for fraud and unfair and deceptive trade practices based on his theory regarding Defendant's SKU number system, the facts regarding this system are not relevant to the remaining pending issues on summary judgment.

In his response brief, Plaintiff has therefore narrowed his breach of contract claim, leaving four issues in dispute. First, Plaintiff contends that Defendant breached the Designer Agreement by failing to pay him royalties for the following: (1) Defendant's Oceanic Collection; (2) Defendant's Napa Valley Collection; (3) Defendant's Cottage Bunk Bed; and (4) Defendant's Princess Bed. Defendant contends that Plaintiff cannot show that he designed the Oceanic Collection, the Napa Valley Collection, or the Cottage Bunk Bed. As to the Princess Bed, Defendant concedes that Plaintiff designed certain components of the Princess Bed and contends that, at most, Plaintiff is entitled to royalties based on his design of those components.

A. Plaintiff's Claim that He is Due Royalties for the Oceanic and Napa Valley Collections

As to his claim for unpaid royalties on the Oceanic and Napa Valley Collections, I first note that Plaintiff concedes in his response brief that he did not design the Oceanic Collection or Napa Valley Collections, stating that "as with Oceanic, Lawson did not ever specifically design furniture pieces for Napa Valley." (Pl.'s Resp. Br., p. 8.) Moreover, as to the Oceanic Collection, Plaintiff's response does not controvert two undisputed facts: (1) that Defendant produced the engineering designs for the Oceanic Collection, which were created by Defendant's in-house designer, and (2) that the designs for the Oceanic Collection were prepared from designs for a collection that *predated* Plaintiff's relationship with Defendant.

(*See* Bryant Dep., attached as Def.'s Ex. B, pp. 55-58; Bryant Decl. ¶¶ 12-15, attached as Def.'s Ex. C.)  Furthermore, as to the Napa Valley Collection, Plaintiff has forecast no evidence to dispute that Defendant's in-house designers developed the design for the Napa Valley Collection.  (*See* Bryant Decl. ¶¶ 16-17; Bryant Dep., pp. 47-49.)

In support of his claim for unpaid royalties, Plaintiff contends, however, that Defendant created derivatives of or otherwise "copied" Plaintiff's designs for the Cambridge and Wrenn's Nest collections to create the Oceanic and Napa Valley Collections, respectively.[3]  (Pl.'s Resp. Br., pp. 3, 5, 8-9.)  I agree with Defendant that, even if this were true, Plaintiff has no claim against Defendant for unpaid royalties on the net sales of the Oceanic and Napa Valley Collections.  That is, as Defendant notes, the Designer Agreement does not provide Plaintiff with a right to royalties for derivatives of his designs.  To the contrary, the Designer Agreement conveys all ownership rights in any of Plaintiff's designs to Defendant once that design is produced.  (*See* Designer Agreement, stating that "[a]ll designs once accepted and placed into manufacturing become the exclusive property of the COMPANY").  Therefore, as the exclusive owner of the design under the Designer

---

[3] Plaintiff concedes that the Cambridge and Oceanic designs are different with respect to at least the following design modifications: (1) bent drawer fronts in Cambridge were changed to flat front in Oceanic; (2) flat panels at the top of the Master Mirror in Cambridge were changed to slatted panels in Oceanic; (3) and drawer pulls were changed. (Pl.'s Resp. Br., p. 3.)  Plaintiff also concedes that the Napa Valley case goods have different feet, a different base or apron, and different hardware when compared to Plaintiff's Wrenn's Nest design.  (Pl.'s Resp. Br., p. 4; Pl.'s Dep., p. 170, attached as Def.'s Ex. A.)

Agreement, Defendant would have the exclusive right, if it wished, to modify or create derivatives of the design.[4] In sum, I agree with Defendant that Plaintiff is not due any royalties for sales of the Oceanic or Napa Valley Collections.

B. <u>Plaintiff's Claim that He is Due Royalties for the Cottage Bunk Bed</u>

As to the Cottage Bunk Bed, Defendant has produced evidence on summary judgment that the Cottage Bunk Bed predates Plaintiff's relationship with Defendant. (*See* Bryant Dep., pp. 62-63.) In his response brief, Plaintiff does not dispute or even mention the fact that the design for the Cottage Bunk Bed predates Plaintiff's relationship with Defendant. Furthermore, Plaintiff admitted in his deposition that if the Cottage Bunk Bed design predated his relationship with Defendant he would not be entitled to royalties. (*See* Pl.'s Dep., pp. 188-89.) I agree with Defendant that Plaintiff's claim for royalties for the Cottage Bunk Bed necessarily fails because he has forecast no evidence to controvert Defendant's evidence that the design for the Cottage Bunk Bed predates Plaintiff's relationship with Defendant.

C. <u>Plaintiff's Claim that He is Due Royalties for the Princess Bed</u>

As to the Princess Bed, the parties agree that the Princess Bed was a collaborative effort in which Plaintiff took an existing headboard of Defendant's and designed a low-profile footboard and frame for it. (*See* Bryant Decl. ¶ 20; Lawson Decl. ¶ 13, attached as Pl.'s Ex. 1.) In his response brief, however, Plaintiff

---

[4] Defendant further notes that under the federal Copyright Act, 17 U.S.C. § 106(2), "the owner of copyright under this title has the exclusive rights . . . (2) to prepare derivative works based upon the copyrighted work."

contends that he is entitled to the same royalty for sales of the Princess Bed as if he were the sole designer.  Plaintiff notes that customers are invoiced for the amount of the sale price of each bed and that they are not invoiced for separate parts of the bed.  Plaintiff contends that he is therefore entitled to royalties based on the net sales of the entire Princess Bed rather than just the footboard and frame for the bed.

Under North Carolina law, the court's principal objective in the interpretation of a contract's provisions is to ascertain the intent of the parties, as set forth by the plain language of the contract.[5]  *Salvaggio v. New Breed Transfer Corp.*, 150 N.C. App. 688, 689-90, 564 S.E.2d 641, 643 (2002).  Where the language of a contract is clear and unambiguous, its construction is a matter of law and the court must enforce the contract as it is written.  *Hemric v. Groce,* 169 N.C. App. 69, 76, 609 S.E.2d 276, 282 (2005).  I agree with Defendant that Plaintiff is not entitled to royalties based on the net sales of the entire Princess Bed, as opposed to simply the component that he designed.  Here, the Designer Agreement states that Plaintiff is entitled to royalties of one percent of net sales of his designs as long as Defendant produces them (with the exception of merchandise sold to Sears, upon which he is

---

[5] As a federal court sitting in diversity, this court must apply the choice-of-law rules of the forum state–in this case, North Carolina.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  Under North Carolina's choice-of-law rules, the interpretation of a contract is governed by the law of the place where the alleged contract was made. *Rhone-Poulenc Agro S.A. v. Monsanto Co.*, 73 F. Supp. 2d 554, 556 (M.D.N.C. 1999) (citing *Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980)). Here, the parties appear to agree that the Designer Agreement was entered into in North Carolina; thus, the court will apply the substantive law of North Carolina to the breach of contract claim.

entitled to royalties of one half of one percent). The Designer Agreement defines "net sales" as "invoiced to customer amounts, less a two percent (2%) provision for handling, freight, and other damage." The Designer Agreement does not expressly address what amount of royalty would be due for a collaborative design. Defendant has brought forth sufficient evidence, however, that the parties established a course of dealing in which if an item designed by Plaintiff was used in connection with an item not designed by him, he received a royalty based on the part he designed. That is, if Plaintiff designed a dresser mirror and the mirror was used with a dresser that was not designed by him, he was paid a royalty for the mirror, but not for the dresser. (*See* Bryant Dep., pp. 30-31.) Defendant has also presented evidence that Defendant's accounting software tracks the sales figures for each component of the bed, including the headboard (which was not designed by Plaintiff), and each of the remaining portions of the frame (which were designed by Plaintiff). (*See* Alain Pomerleau Decl. ¶ 24, attached as Def.'s Ex. D.) Defendant contends that, from this detailed information, Defendant can in fact calculate the royalty owed to Plaintiff for his contribution to the design. (*Id.*)

In response, Plaintiff has offered no evidence to rebut Defendant's evidence regarding the parties' course of dealing when component parts are involved, nor has Plaintiff refuted Defendant's contention that it is able to calculate the royalty owed to Plaintiff based on the component that he designed. Moreover, nothing in the Designer Agreement itself states that Plaintiff is entitled to royalties for the sale of

an entire furniture piece when he only designed a component of the piece, and to interpret the Designer Agreement in this way would result in compensating Plaintiff for work that he did not do. Thus, the most reasonable interpretation of the plain language of the Designer Agreement is that each designer is entitled to royalties for only those components that he himself designed. Furthermore, Defendant has shown that it is able to determine the amount of sales that should be attributed to Plaintiff's contribution to the design of the bed. For these reasons, the court should find that Plaintiff is entitled, at most, to royalties based on the net sales of the bed component that he designed, rather than the entire bed.

**CONCLUSION**

For the reasons stated above, it is **RECOMMENDED** that the motion for summary judgment (docket no. 18) be **GRANTED**. To this extent, the court should make the following findings of law: (1) Plaintiff cannot establish a claim for breach of contract seeking royalties on Defendant's Oceanic Collection, Napa Valley Collection, and Cottage Bunk Bed because he did not design those collections; (2) Plaintiff cannot establish a claim for breach of contract seeking unpaid royalties on Defendant's Wrenn's Nest, Cambridge, Icon, La Renaissance, and Burlington Collections, and Cambridge crib as a matter of law, as Plaintiff has conceded that he is not owed any more royalties on these collections; (3) Plaintiff's breach of contract claim seeking unpaid royalties on Defendant's Wrenn's Nest Crib, Shuttered Sleigh Bed, and Princess Bed are limited to the royalties that became due on or after

October 13, 2005, as Plaintiff has conceded that his recovery is limited to this date by the applicable statute of limitations; and (4) Plaintiff's claims for fraud and unfair and deceptive trade practices should be dismissed because Plaintiff has expressly abandoned these claims.

As to Plaintiff's claim for unpaid royalties on the Wrenn's Nest Crib, Shuttered Sleigh Bed (referred to by Defendant as a "low-profile version" designed by Plaintiff for Defendant's Icon collection), and a component of the Princess Bed (designed by Plaintiff) that became due on or after October 13, 2005, this case should not be dismissed outright, as these claims may still be viable. (*See* Pomerleau Decl. ¶¶ 24-28.) That is, as to these three items, Defendant's Treasurer Alain Pomerleau states in his Declaration that Defendant inadvertently failed to pay royalties to Plaintiff for these items and that once Defendant discovered the oversight, Defendant began paying Plaintiff royalties for these items "effective August 2009." (*Id.*) Defendant does not address clearly, however, whether Plaintiff is still owed any royalties for these three items from between October 13, 2005 (the agreed-upon statute of

limitations cut-off date) and when Defendant began paying him royalties effective August 2009.[6] In sum, Plaintiff's breach of contract claim should not be dismissed in its entirety.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
January 28, 2010

---

[6] In its Reply brief, Defendant contends that the court's ruling on the statute of limitations issue will obviate the need for trial on Plaintiff's claims for royalties, inasmuch as the matter would be reduced to a matter of simple accounting. (*See* Def.'s Br., p. 16, n.3.) To this extent, if the court adopts this Recommendation, the parties are encouraged to resolve between themselves the remaining royalties owed, if any.